UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOSE NUNO, :
      Petitioner :
:
    vs. : CIVIL NO. 1:CV-14-0872
:
WARDEN D. ZICKEFOOSE, :
      Respondent (Judge Caldwell)
:
:
:

*M E M O R A N D U M*

I. *Introduction*

Jose Nuno, an inmate at the United States Penitentiary in McCreary, Pine Knot, Kentucky, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a prison disciplinary proceeding held at the federal correctional institution in Lompoc, California, (FCI-Lompoc) where he was found guilty of fighting with another person.[1] Petitioner was sanctioned with the loss of twenty-seven days' good conduct time.

Petitioner makes two claims. First, he is not guilty of the offense because, after he newly arrived at FCI-Lompoc, staff set him up to fight with other inmates in a kind of "gladiator[ial]" combat. (Doc. 1, ECF p. 3). He had a separation order from these inmates, and he was only acting in self-defense. Second, his right to due process was

---

[1] The petition was filed while Nuno was an inmate at the United States Penitentiary in Canaan, Pennsylvania, within this federal district.

violated because he was refused a copy of the "security threat group assignment" which would have shown he had a separation order from the other inmates. (*Id.*, ECF p. 2).

Respondent opposes the petition by arguing that Petitioner has failed to exhaust his administrative remedies and because some evidence supports the conclusion of the Discipline Hearing Officer (DHO) that Petitioner committed the offense charged.

II. *Background*

In an incident report, dated May 10, 2012, Petitioner was charged with "Fighting with another person," a violation of Code 201. (Doc. 11-2, ECF p. 1). The reporting officer described the incident as follows:

> 5-10-2012, at 5:35 pm, while supervising the evening food service movement from the K Dorm officer's station, I heard the sound of lockers falling. When I looked to the left, I observed inmates [redacted] striking inmate NUNO, Jose . . . with closed fists. Specifically, inmates [redacted] were striking inmate NUNO with closed fists about the head and face area. Inmate NUNO was striking back with closed fists about the head and face area as well. I then called for assistance and was able to separate the inmates and applied hand restraints to inmate [redacted]. I noticed inmates [redacted] and [redacted] bleeding from their facial area constant (sic) with injuries sustained from a fight. Inmates [redacted] and NUNO were all placed in hand restraints and escorted from K Dorm.

(Doc. 11-2, ECF p. 1, Incident Report). Petitioner said "No comment" when offered an opportunity to speak by the Unit Discipline Committee. (*Id.*). The Committee referred the report to the DHO for further hearing. (*Id.*).

2

On July 11, 2012, the DHO hearing was held.  According to the DHO, Petitioner waived the right to staff representation and requested no witnesses.  (Doc. 11-2, ECF p 2).  Also, after being read the incident report, Nuno stated "No Comment."  (*Id.*). The DHO found Petitioner guilty of the charge by the "greater weight of the evidence." (*Id.*, ECF p. 4).  In part, the DHO relied on the following evidence: (1) the reporting officer's version of events, as quoted above, (*id.*, ECF p. 3); (2) Petitioner's statement to the investigating officer that he had been minding his own business, that two guys had jumped him, and that he had fought back in self defense, (*id.*); and (3) medical reports and photographic evidence showing the extent of any injuries to the other inmates and Petitioner.  (*Id.*, ECF pp. 3-4).  As noted, the DHO sanctioned Petitioner with twenty-seven days' loss of good conduct time.  (*Id.*, ECF p. 4).  Petitioner did not pursue administrative remedies.  (Doc. 6-3, ECF p. 3, McCluskey penalty-of-perjury declaration ¶ 9, and supporting documentation).

III.   *Discussion*

Respondent argues the petition should be denied because Nuno did not exhaust his administrative remedies.  "Generally, prisoners must exhaust their administrative remedies prior to bringing habeas claims under 28 U.S.C. § 2241." *Guerrero v. Recktenwald*, 542 F. App'x 161, 163 (3d Cir. 2013)(nonprecedential)(citing *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 760 (3d Cir. 1996)).  Here, as Respondent points out, Petitioner had available the BOP's administrative remedy program at 28 C.F.R Part 542 to appeal the DHO's decision.  *See* 28 C.F.R § 541.8(i).

The prisoner must first appeal to the regional director. *See* 28 C.F.R § 542.14(d)(2). *See also* Program Statement 5270.09, p. 35 ("The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program."). The prisoner must then appeal to the general counsel as the final step in the administrative remedy process. 28 C.F.R § 542.15(a). However, as stated above, Petitioner did not even take the first step of appealing to the regional director.

Petitioner has therefore failed to exhaust his administrative remedies. This failure constitutes a procedural default, *Moscato*, *supra*, 98 F.3d at 760, and would bar our review of the petition, *id.* at 762, unless Petitioner can show the default should be excused. Petitioner can excuse the default if he shows cause and prejudice for the default. *Id.* at 761, citing *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986).

Petitioner argues the following as cause for his failure to exhaust his administrative remedies: (1) he was a new arrival at the Bureau of Prisons when he was forced into fighting the other inmates so he had not had the chance to attend admission and orientation and be informed about how to exhaust his administrative remedies; and (2) as a new arrival, he was kept in segregation without assistance from other inmates and did not have access to the law library. (Doc. 7, Reply Br., at ECF p. 2).

Petitioner's argument lacks merit. As Respondent shows, Nuno did not just come into the custody of the Bureau of Prisons on the date of the incident. He had been in federal custody before his confinement at FCI-Lompoc, as he had been incarcerated at

4

the United States Penitentiary at Lompoc immediately before his transfer to FCI-Lompoc. (Doc. 6-3, ECF p. 8). Additionally, Petitioner had invoked the administrative remedy procedure by filing grievances at least twice before the date of the fighting incident (Doc. 6-3, ECF p. 15), so he did not need an admission-and-orientation session to know about that procedure. Further, the DHO report indicates that Petitioner had been advised of his right to appeal. (Doc. 11-2, ECF p. 4). Finally, even if Petitioner did not have access to the law library, that did not mean he did not have access to the forms necessary to file his administrative appeals.

To demonstrate cause for a procedural default, the petitioner must show that some objective factor external to his pursuit of his administrative remedies impeded his efforts to comply with the BOP's administrative process. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Leyva v. Williams,* 504 F.3d 357, 366 (3d Cir. 2007). There was no factor external to Petitioner here as it was Petitioner who did not invoke the administrative process.

When a habeas petition challenges a criminal conviction, a petitioner can excuse his default in another way, if he shows there has been a fundamental miscarriage of justice. *See Thomas v. Secretary, Pennsylvania Dep't of Corr.*, 495 F. App'x 200, 207 (3d Cir. 2012)(nonprecedential). It is uncertain whether the fundamental-miscarriage-of-justice exception applies to habeas petitions challenging prison disciplinary proceedings.

*See Pinet v. Holt*, 316 F. App'x 169, 171 n.3 (3d Cir. 2009)(nonprecedential).[2]  But even if we apply the exception, Petitioner cannot show a fundamental miscarriage of justice.

The exception requires a petitioner to show actual innocence.  *Thomas*, *supra*, 495 F. App'x at 207.  In the context of a habeas petition challenging a criminal conviction, to show actual innocence, "a petitioner must demonstrate two things . . . . First, a petitioner must present new, reliable evidence that was not presented at trial. *Schlup* [v. Delo], 513 U.S. [298,] 324, 115 S.Ct. [851,] 865, [130 L.Ed.2d 808 (1995]. Second, a petitioner must show by a preponderance of the evidence, '"that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' *Id.* at 327, 115 S.Ct. at 867." *Houck v. Stickman,* 625 F.3d 88, 93 (3d Cir. 2010).  The court examines not just the new evidence but the old evidence as well. *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006).  "[A]ctual innocence requires a showing of factual innocence, not mere legal insufficiency."  *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002).  Petitioner cannot show his actual innocence of the disciplinary offense of fighting with another person because he himself admits he was involved in the fighting.

We will dismiss the petition for failure to exhaust administrative remedies. We will not issue a certificate of appealability since Petitioner has the right to appeal our

---

[2]  We note that the Seventh Circuit has applied the exception to prison disciplinary proceedings.  *See Martin v. Vannatta*, 175 F. App'x 45, 46 (7th Cir. 2006)(nonprecedential).

order to the Third Circuit without a certificate.  *See Burkey v. Marberry*, 556 F.3d 142, 146 (3d Cir. 2009).

                /s/William W. Caldwell
                William W. Caldwell
                United States District Judge

Date: July 29, 2015